# The United States, on the relation of George W. Jones, plaintiff in error, *vs.* Timothy Fanning, defendant in error.

## *Error to Dubuque.*

The Mississippi River, so far as it affords facilities for transportation, cannot be obstructed or monopolized. It is a common high way, and forever free.

The Mississippi, so far as it presents an obstruction to land carriage, is left to the

sound discretion of the legislature, to provide means for surmounting such obstructions by means of *Ferries;* and it may for this purpose grant to individuals *exclusive privileges*, within reasonable limits, when done in good faith, for the purpose of furnishing an indispensable link in the chain of dry land transportion.

And such a privilege may be granted at the landing in front of Dubuque, although by the act of Congress of 1836, this front was set apart and appropriated for public highways and other public uses.

This was a proceeding in the nature of a writ of Quo Warranto by the United States on the relation of George W. Jones against Timothy Fanning to deprive him of the right and privilege of a ferry opposite to the town of Dubuque.

The complaint set up was that the right of the ferry was given by an act of the legislature to Jones, and that Fanning intruded into and usurped the right.

Fanning plead that by an act of the legislature of Iowa of the 14th December, 1838, the right of ferry was given to him, upon certain conditions, which he had complied with. As also a supplementary act of the 24th July 1840. This plea denied the right of Jones to the ferry, and concluded to the country.

Jones replied, protesting the right of Fanning under his charter to the ferry—denied that Fanning had complied with the conditions, and, that he had thereby forfeited the privilege ; and concluded with a verification and prayer for judgment.

A jury was sworn to try the issue joined. And upon the trial the relator asked the court to instruct the jury that the act granting the privilege to Fanning was void, because not properly approved by the Governor, which was refused. That the keeping of one boat was not sufficient, especially when moored at the Illinois shore at night ; which the court refused to give, except in a modified shape, to wit : that the mere fact of mooring the boats at night on the Illinois shore, after ferrying hours, as prescribed by law, would not be a forfeiture.

The jury returned a verdict that Fanning had not forfeited his charter, and that he had a right to the enjoyment of his privileges.

Judgmen was thereupon rendered in favor of the defendant Fanning for costs.

The Relator in the name of the United States seeks to reverse the judgment below on a writ of error from this court.

Errors assigned :

1. That the plea of the said defendant, and the matters therein con-

tained are not sufficient in law for him to use, keep and enjoy the franchise and privilege of a ferry at the town of Dubuque.

2. That by the record it appears that the judgment in form aforesaid was given against the United States on the relation of Jones, when it ought to have been given in behalf of the relator, &c.

3. That judgment should not have been rendered against the plaintiff for costs.

4. That the court erred in the instructions to the jury, (as set forth in the record below.)

S. HEMPSTEAD, for plaintiff in error.

DAVIS, ROGERS, CRAWFORD & BERRY, for defendant in error.

PER CURIAM, MASON, CHIEF JUSTICE.—The first question that arises in this case is in relation to the force and effect of the act of Dec. 14th 1838, granting a ferry charter to the defendant. It is contended by the plaintiff in error that the approval of the executive to that law is only conditional, and such as not to vest in the grantee the right which he claims; that it is not in accordance with the organic act and consequently of no validity.

We think counsel are mistaken in this view of the case. The approval of the Executive is absolute, unconditional. But the Governor appends a note for the purpose of expressing a judicial opinion. He has said in effect " I give this statute may approval, but still I regard the law in some respect as void, because it transcends the bounds of legislative power." He does not withhold his assent but merely expresses a doubt whether that assent will be of any avail for certain purposes. The note referred to is important to show the correctness of the legal opinion of His Excellency on this subject, but for no other purpose ; a matter which is not material to the decision of this case.

An objection is made to the plea of the defendant, inasmuch as it does not allege that the act was *approved*, merely avering that it was *passed*. If this were an objection it would lie equally against the information or declaration where the righs of the relator, Jones are founded upon a basis exactly similar. But the objection is unsound altogether. An act is not "passed" by the legislature until it is duly *approved* by the Governor who, *quoad hoc*, is a part and portion of the legislature.

The next objection which it will be necessary to notice is that raised by the appellant's counsel—that the legislature had no authority to

grant an exclusive privilege to Fanning, that the river is a public highway and the landing upon the western shore of the river is forever reserved for public use by the ordinance of 1787 and the act of Congress of 1836.

Admitting all this to be true, it does not avail the appellant in this case. Had Fanning obtained an injunction to prevent Jones from ferrying across the river, this question would be more properly raised. But the present proceeding is for the purpose of compelling Fanning to show why he is exercising this privilege. If he is only doing what every citizen has a right to do, this would rather seem to be a sufficient answer to the complaint of the relator.

But the legislature has not exceeded its lawful powers in granting such a charter to the appellee. True, the Mississippi river and all the navigable waters leading into it are common highways and must be forever free. The legislature can make no law for obstructing the navigation of these streams.

But the establishment of public roads traversing the country in various directions is a rightful subject of legislation, and the most judicious and effectual mode of establishing and keeping these in repair is a matter that is entrusted to the legislative discretion. The right to construct a road includes the power to provide for overcoming all obstacles in its course as well those presented by a river as by any other object. A ferry (properly so called) is merely the continuance of a road across a river. It is only a substitute for a bridge.

Suppose a bridge should be resolved upon as the best mode of prolonging a road across a navigable stream. If made so as not to obstruct the navigation, the power of the legislature to authorize its construction is unquestionable. It is equally clear that the legislative power is competent to authorize the construction of such bridge by an individual or a company with power to compensate themselves by taking toll. Nor will it we think be doubted that the legislature may for the purpose of encouraging individuals to construct such bridge, grant them an exclusive privilege to a reasonable extent and prohibit all other persons from interfering therewith. The rule would be the same in relation to a ferry which is a floating bridge. The granting of an exclusive privilege to establish such a public convenience within certain reasonable limits, would be no violation of that provision of the ordinance of 1787, which declares the Mississippi and its tributaries common highways and forever free, provided the navigation proper of the river be not thereby interfered with or obstructed.

But it is contended that the right to navigate the river crosswise is just as sacred as to do the same lengthwise, and that if an exclusive privilege can be granted to navigate between opposite points of the Mississippi a like privilege might be given between Dubuque and Galena. To reason in this way one has to lose sight of the evident object of the provision of the ordinance of 1787 above alluded to.

The Mississippi river is regarded in a very different light by persons under different circumstances. To the traveller by land it is a serious obstacle—to the proprietor of steamboats, one of the most valuable advantages. The object of the provision in the ordinance was to render sacred and free the facilities presented by the river, not to perpetuate impediments interposed by it to the traveller by land. It is only when it is bona fide for the purpose of overcoming such impediment that exclusive privileges are permissible, but never where the primary object is a monopoly of the benefits of navigation which it affords. If a person wished to use the buoyant power of the Mississippi river for the purpose of transporting heavy freights either longitudinally or from one shore of the river to the other, and entirely unconnected with any public highway the power of the legislature to interfere with his rights in this respect, would certainly be questionable. The river in that case offers a facility for transportation of which he has the right to avail himself. The case here contemplated is very different from the prohibition of the establishment of an opposition bridge, or a ferry which was actually intended to form part of a public land road.

A similar destinction to that here made is recognized in other cases. The right of the public to the freedom of navigating the Mississippi river is certainly no more sacred than that of an individual proprietor, to the exclusive use of his own soil. The legislature would certainly have no power to take away a portion of that soil—either with or without compensation—and give to another individual or company the exclusive right to raise wheat or other product thereon. But they may grant away the right of establishing a public turnpike across the farm of any individual by remunerating him for the land taken, and they may also prohibit him or any one else within a reasonable distance from opening another road in a parallel direction which should be for the purpose or have the effect of interfering with the exclusive privilege given to the proprietors of the public turnpike. At the same time the owner could not be prohibited from traversing his own premises in any direction or allowing others to do so where such act does not come in conflict with the legitimate business of the public turnpike.

The conclusion to which we are brought on this subject therefore is, that the Mississippi river so far as it affords facilities for transportation, cannot be obstructed or monopolized. It is a common highway and forever free. But so far as it presents an obstruction to land carriage it is left to the sound discretion of the legislature to provide means for surmounting such obstructions by means of ferries, and that they may even for this purpose give individuals exclusive privileges within reasonable limits when done in good faith for the purpose of furnishing an indispensable link in the chain of transportation on dry land.

It is however contended that although an exclusive privilege might be granted to ferry across the river, such privilege would not extend to the landing in front of Dubuque, which by the act of Congress, of 1836, are appropriated for " public highways and other public uses."

The above reasoning in the case of the river, will apply with little variation to the Dubuque landing. Will it be contended that the fact of its being set apart for public use would prevent the legislature from authorizing a bridge across the Mississippi to terminate thereon? If intended to be used among other things for public highways a portion of it is applied to its apporpriate object when made the terminus of a highway leading through a portion of the State of Illinois and across the river. The right of appropriating it for public highways includes the right to employ any reasonable and ordinary means of rendering it more available as such. If necessary for the accomplishment of this object the legislature have power to set apart a particular portion as the termination of a bridge or a ferry, for these are the ordinary if not the only means by which an over land highway is to be continued across a navigable stream.

But it is admitted in the argument that the legislative power is competent to grant a ferry charter—the only objection being to its exclusive character. Is not this admitting away the whole of the present case.— If Fanning has a right under his charter to keep a ferry will an information in the nature of a quo warranto against him be available as a means of testing whether the law under which he is acting is valid to the full extent claimed. As well might this proceeding be instituted against a justice of the peace to show cause why he exercised the functions of his office merely, because our statute gave him jurisdiction where the sum claimed was $50 *exclusive of interest*, when by the organic act, he is limited to cases where the whole sum claimed does not exceed $50. The fact that under the statute, he claims to exercise powers which a paramount law has denied him is no reason why he should not

45

exercise those powers that are legitimately granted. This proceeding is proper for the purpose of ascertaining whether the respondent has not usurped or intruded himself into this franchise, but not for the purpose of giving shape, boundaries and dimensions to the franchise itself. If as is contended, the rights of the relator under his charter do not conflict with the lawful right of the respondent, under his, let the former proceed in the exercise of those rights, and when disturbed, let him then resort to the proper legal means of testing their respective rights, but the apprehension of being so disturbed will not justify the institution of a proceeding of this nature in anticipation.

As to the last point: that the court erred in rendering costs against the United States, when they should have been rendered against the relator, although this may have been erroneous, we do not see how it could prejudice the appellant. As no other party complains of this ruling of the court, except the party most benefitted by the alleged error, we shall not disturb the judgment below on that account.

Judgment affirmed.